IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:21-cr-42-001 |
| | ) | |
| ERIC LEE SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF DEFENDANT WITH RESPECT TO SENTENCING
FACTORS, OBJECTIONS TO THE PRESENTENCE REPORT
AND MOTION FOR DOWNWARD VARIANCE**

Defendant Eric Lee Smith, by and through counsel, pursuant to this Court's Sentencing Procedures Order, submits this position with respect to the advisory sentencing guidelines and the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). Mr. Smith entered a plea of not guilty to all counts of the Indictment and does not admit or agree that he knowingly committed any of the criminal acts charged in the Indictment for which he was convicted at trial. Accordingly, Mr. Smith respectfully objects to the entirety of the offense conduct information contained in the Presentence Investigation Report (PSR).

In addition to considering the advisory sentencing guidelines, at sentencing the Court should consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). After considering Mr. Smith's personal history and background the Court must "make an individualized assessment" as to the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 53-60 (2007); *Pepper v. United States*, 562 U.S. 476 (2011). The Court's "overarching" duty is to impose a sentence that is "sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough v. United States*, 552, U.S. 85, 101 (2007). Given Mr. Smith's lack of criminal history, his chaotic family history, the applicable mandatory penalties, and his projected age at release; Mr. Smith

1

respectfully requests that the Court impose an overall sentence of no more than 180 months, to be followed by five years of supervised release.

### I.     Procedural Background

Mr. Smith was arrested on November 25, 2020, on state charges related to the current federal case and has been in custody since that time. (PSR ¶55). On June 30, 2021 he was charged by federal indictment with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (Count One); maintaining a drug premises, in violation of 21 U.S.C. § 856(a)(1) (Counts Two and Three); possession with intent to distribute methamphetamine on April 15, 2020, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Four); possession of a firearm in connection with Counts One and Four, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Five); possession and discharge of a machine gun in connection with Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and (B)(ii) (Count Six); possession of a machine gun bolt and related parts, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2) (Count Seven); and possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count Eight). (ECF 3).

Mr. Smith was not moved to federal custody until October 5, 2021 at which time counsel was appointed. (PSR p. 2). At arraignment on October 8, 2021, Mr. Smith pled not guilty to all charges. Trial was initially scheduled for January 11, 2022, but a continuance of the trial date was allowed to permit defense counsel to review the voluminous discovery, adequately investigate the case, and prepare for trial. (ECF 19).

Trial commenced on March 15, 2022, before Senior United States District Judge Raymond A. Jackson, and on March 21, 2022, the jury returned its verdict finding Mr. Smith guilty on Counts One through Five, Count Seven and Count Eight. The jury found Mr. Smith not guilty on Count Six. A Presentence Investigation Report (PSR) was directed, and a Sentencing Procedure Order

was entered directing the parties to file sentencing motions fourteen days before sentencing. (ECF 53). Mr. Smith's PSR was released on July 8, 2022. On July 12, 2022, counsel notified the Probation Officer and counsel for the government of Mr. Smith's objections to the PSR and requested several corrections or clarifications. A conference was held on July 15, 2022. Mr. Smith's requests for corrections or clarification were granted, but his objections were denied.

The Probation Officer attributes the defendant with 111 ounces of a mixture and substance containing methamphetamine, which converts to 3.1468 kilograms and results in a base offense level of 32 (at least 1.5 kilogram, but less than 5 kilograms). (PSR ¶26). The Probation Officer then attributes a two-level enhancement pursuant to USSG §2D1.1(b)(12) for maintaining a drug premises and another two-level enhancement for attempting to obstruct justice pursuant to USSG §3C1.1, for an overall adjusted offense level of 36. (PSR ¶s 26-31). Mr. Smith has never previously been convicted of a felony and was correctly attributed with 0 criminal history points resulting in a criminal history category I. (PSR ¶48). The Probation Officer applied the grouping rules set forth in USSG §3D1.4 and determined that there should be no increase to the adjusted offense level. (PSR ¶s 38-41). Accordingly, the Probation Officer recommends an advisory sentencing guidelines range of 188 months to 235 months on Counts One through Four. On Count Five there is a mandatory penalty of 60 months which must run consecutive. On Counts Seven and Eight, the statutory maximum sentence is 120 months which restricts the advisory sentencing guidelines on those Counts. (PSR, Part D).

Sentencing is scheduled for August 16, 2022, at 11:00 a.m. in Norfolk.

**II.     Sentencing Guidelines - Objections to Offense Conduct**

**A.      Objection Generally to Paragraphs 5-20, 22, 26-27 and 30-31.**

In light of his plea of not guilty and decision to proceed to trial, Mr. Smith objects generally to all of the information contained in the offense conduct section of his PSR, including Paragraphs 5 through 20, and Paragraphs 22, 26-27 and 30-31 and the advisory sentencing guidelines based on the conduct. Mr. Smith does not admit that he knowingly conspired to distribute methamphetamine, or that he distributed or possessed methamphetamine with the intent to distribute the substance. Nor does Mr. Smith admit that he committed the conduct that relates to Counts Five, Seven and Eight.

### B.     Objection to Drug Quantity.

Mr. Smith is attributed with a total of 111 ounces of methamphetamine. (PSR ¶s 6, 8, 12 and 26). The government does not contend that any methamphetamine was seized from Mr. Smith. Rather, the Probation Officer attributes 96 ounces based on the testimony of B.J. and 15 ounces based on the testimony of T.L. Neither of these females had the requisite experience to provide credible testimony regarding the quantity or weight of methamphetamine they observed. Paragraph 6 of the PSR includes a statement Mr. Smith "began to talk to multiple other inmates and admitted to selling methamphetamine and receiving it in the mail." There was no evidence from the inmates that testified at trial that Mr. Smith was involving with receiving methamphetamine in the mail. Accordingly, "receiving it in the mail" should be deleted. Finally, while the government called an expert witness to voice an opinion regarding the quantity of a white powder depicted in the photograph that was admitted as Government Exhibit 31, the witness under cross-examination was not able to say with certainty that the substance was in fact methamphetamine. No methamphetamine, not even residue, was seized from Mr. Smith or offered as an exhibit at trial.

### C.     Objection to Premises and Obstruction Enhancements.

In addition, Mr. Smith specifically objects to the application of the two-level enhancement pursuant to USSG §2D1.1(b)(12) for maintaining a drug premises pointing out that the evidence at trial demonstrated that both properties relied on to support this enhancement were used by Mr. Smith as his residence. Defense witness Mr. Thomas testified that during the time Mr. Smith lived at his property on Fary's Mill Road, the trailer was used as a residence. Moreover, Mr. Thomas who lived about 200 feet from the trailer did not observe any activity that was consistent with using the premises to store or distribute illegal narcotics. Witness T.L. described her relationship with Mr. Smith as a dating relationship. See, USSG §2D1.1, Application Note 17, "manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises."

Mr. Smith also objects to the two-level enhancement for attempting to obstruct justice pursuant to USSG §3C1.1, because all of the witnesses testified at trial. (PSR ¶ 19). Additionally, one of the witnesses, D.S. was asked at trial if Mr. Smith had threatened him and he denied any threats from Mr. Smith under oath at trial. The government then declined to question the other witnesses about the alleged threats. The witnesses were held at Western Tidewater Regional Jail under circumstances where they had the opportunity to coordinate both their testimony and any information provided post-trial. These witnesses lacked credibility and had each been convicted of multiple felonies.

### D. Objection to Inclusion of Acquitted Conduct.

Mr. Smith specifically objects to the inclusion of the information contained in paragraphs 13 and 14 of the PSR because the information specifically relates to Count Six and comprises

conduct for which he was acquitted by the jury. Mr. Smith also respectfully requests that the Court not consider USSG §5K2.17 as a possible basis for an upward departure. (PSR ¶99).

The reference to and use of acquitted conduct in sentencing, including the information in Paragraphs 13 and 14, is fundamentally unfair and violates Mr. Smith's Fifth and Sixth Amendment rights. The use of acquitted conduct in sentencing is an "important, frequently recurring, and troubling contradiction in sentencing law." *United States v. Bell*, 808 F.3d 926, 932 (D.C. Cir. 2015) (Millett, J., concurring in the denial of rehearing en banc), *cert. denied*, 137 S. Ct. 37 (2016). The Sixth Amendment right to jury trial is designed to protect defendants from prosecutorial and judicial overreach. See *Duncan v. Louisiana*, 391 U.S. 145, 155-56 (1968). It is "a fundamental reservation of power in our constitutional structure." *Blakely v. Washington*, 542 U.S. 296, 305-06 (2004). The use of jury-rejected allegations at sentencing violates this right. When the jury acquits, it makes a "legal certification" that "an accused person is not guilty of the charged offense." Acquittal, Black's Law Dictionary (10th ed. 2014). As the Supreme Court has emphasized, "the law attaches particular significance" and "special weight" to a jury's decision to acquit a defendant. *United States v. Scott*, 437 U.S. 82, 91 (1978); *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980). An acquittal is meant to be final and "unassailable." *Yeager v. United States*, 557 U.S. 110, 122-23 (2009). As Justices and judges have continued to emphasize, the "disregard[]" for the Sixth Amendment through the use of acquitted conduct at sentencing "has gone on long enough." *Jones v. United States*, 135 S. Ct. 8, 9 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from denial of certiorari).

Mr. Smith acknowledges that in *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), the Supreme Court considered whether the practice of considering acquitted conduct for sentencing purposes offended the Double Jeopardy Clause and held that it did not. But *Watts*

"presented a very narrow question" regarding the Double Jeopardy Clause. See *United States v. Booker*, 543 U.S. 220, 240 n.4 (2005). In the two plus decades since *Watts*, several Justices and judges have questioned whether the use of acquitted conduct at sentencing comports with the Sixth Amendment's jury trial guarantee and due process principles and have urged the Supreme Court to "take up this important, frequently recurring, and troubling contradiction in sentencing law." Justice Kennedy warned that increasing a sentence based on facts the jury rejected raises concerns of "undercutting the verdict of acquittal." *Watts*, 519 U.S. at 170 (Kennedy, J., dissenting). Writing separately in *Bell*, then-Judge Kavanaugh posited that increasing a defendant's sentence based on acquitted conduct "seems a dubious infringement of the rights to due process and to a jury trial." 808 F.3d at 928 (Kavanaugh, J., concurring in the denial of rehearing en banc).

This Court would not be alone in concluding, and should conclude, that the use of acquitted conduct at sentencing is unconstitutional, and "violates both our common law heritage and common sense." *United States v. White*, 551 F.3d 381, 387 (en banc) (Merritt, J., dissenting) (writing on behalf of six judges); see also, e.g., *United States v. Mercado*, 474 F.3d 654, 658-65 (9th Cir. 2007) (Fletcher, J., dissenting); *United States v. Faust*, 456 F.3d 1342, 1349-53 (11th Cir.) (Barkett, J., specially concurring). Several judges have observed that "the use of acquitted conduct to enhance a defendant's sentence should be deemed unconstitutional under both the Sixth Amendment and the Due Process Clause of the Fifth Amendment. *United States v. Lasley*, 832 F.3d 910, 920-21 (8th Cir. 2016) (Bright, J., dissenting); see also *United States v. Coleman*, 370 F. Supp. 2d 661, 671 (S.D. Ohio 2005) (Marbley, J.); *United States v. Pimental*, 367 F. Supp. 2d 143, 152 (D. Mass. 2005) (Gertner, J.).

Because the use of acquitted conduct at sentencing violates Mr. Smith's Fifth and Sixth Amendment rights, this Court should refuse to consider the acquitted conduct set forth in paragraphs 13 and 14 and should strike these paragraphs from Mr. Smith's PSR.

### III. Section 3553(a) Statutory Sentencing Factors

Section 3553(a) obliges the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with appropriate correctional treatment. 18 U.S.C. §§ 3553(a)(1) and (a)(2). The Court should also avoid unwarranted disparity among defendants with similar criminal history and conduct. 18 U.S.C § 3553(a)(6). The sentencing guidelines are advisory only and the Court's "overarching" duty is to "impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. *Kimbrough*, 552, U.S. at 101.

**A. History and Characteristics of Defendant.**

Mr. Smith is 40 years of age. He has never before been convicted of any crime and has 0 criminal history points. This lack of any criminal history is remarkable in light of the defendant's chaotic family life while growing up.

As a child, his father's employment required the family to move multiple times which resulted in Mr. Smith living in eight different states and the Bahamas. (PSR ¶ 58). The frequent moves necessitated Mr. Smith constantly changing schools. As a young child Mr. Smith suffered both physical and sexual abuse. (PSR ¶ 59). For a short period of time around 11 years of age, Mr. Smith experienced relative stability in his family life, but his family left Virginia again and returned to Indiana. Because of the chaos in his early life, Mr. Smith dropped out of school during

middle school and elected to work full-time rather than attend any type of home-schooling. (PSR ¶ 61). At the age of 15 when his family returned to Virginia he was expelled from middle school and enrolled in the Commonwealth Challenge program in Virginia Beach. At the age of 16, Mr. Smith obtained his GED. (PSR ¶ 62). Clearly, his academic problems were not due to any lack of intelligence, but rather to the chaos of his upbringing. As a young man, Mr. Smith was married twice, but never had children and divorced after each relationship. (PSR ¶ 63-64).

In 2013, Mr. Smith moved from Virginia to Arizona where he remained until approximately December 2019. During his time in Arizona, Mr. Smith was in a committed relationship with Michelle Mackillop. (PSR ¶ 68). They lived together for approximately five years and after resolving their romantic relationship Mr. Smith and Ms. Mackillop have remained close friends. Ms. Mackillop has been a source of great support for Mr. Smith during these proceedings and has regularly been in contact with counsel. Ms. Mackillop has written a strong letter of support for Mr. Smith which is attached as Exhibit 1. For the Court to understand the credibility of her observations, Ms. Mackillop has explained her background, education, and life experiences.

Over the years that Mr. Smith has been close friends with Ms. MacKillop, she has never known him to be involved with drugs or to show any type of violent tendencies towards her or anyone else. She describes Mr. Smith as empathetic and respectful, but she also observed the problematic relationship between Mr. Smith and his family. She observed that Mr. Smith was angry and depressed after contact with his family and observed the abusive text messages that they sent to Mr. Smith. Ms. MacKillop conveys that it has been difficult to stand by someone accused of such serious crimes, but the person that she knew Mr. Smith to be during their years in Arizona is completely contrary to the criminal charges. See, Exhibit 1. She expresses hope that the Court

will allow Mr. Smith a second chance to find the surrogate family which he has spent his life searching for.

Ms. Mackillop also observed that Mr. Smith was a hard worker. Through hands-on-experience Mr. Smith developed substantial skills in construction and carpentry. Mr. Smith held stable employment for two years in Virginia before moving to Arizona. (PSR ¶ 91). After he moved, he worked in an RV park and in 2015 began working as a framer for houses. (PSR ¶ 88-90). Adam Lindley employed Mr. Smith for almost two years in a home remodeling business in Arizona. A letter from Mr. Lindley is attached as Exhibit 2. Mr. Lindley describes Eric Smith as a person of integrity and honor and indicates that he remained friends with Mr. Smith after he changed employment. Mr. Lindley observed that Mr. Smith was always respectful to their clients and was trusted by their clients to do flooring reconstruction and remodel bathrooms in their homes. After finding new employment, Mr. Lindley continued to socialize and celebrate Thanksgivings with Mr. Smith. Mr. Lindley indicates he was shocked by the charges and knows Mr. Smith as someone that is capable of being a law-abiding member of the community.

After a serious automobile accident, Mr. Smith was injured and filed a lawsuit against SuperShuttle of Arizona, the party responsible for causing the accident. In late 2019 Mr. Smith settled the lawsuit for $125,000.00. Given that his relationship with Ms. Mackillop had resolved, Mr. Smith decided to move back to Virginia and purchased land in King and Queen County. Mr. Smith knew that the residence on the property was uninhabitable but intended to tear down the existing structure and build himself a home. Given his background and experience in construction, Mr. Smith was well-qualified for such an endeavor.

When Mr. Smith returned to Virginia, he resided with the Thomas family. Mr. Thomas who testified at trial observed that Mr. Smith had excellent finish carpentry skills when he

measured, determined supplies, and built a deck on the trailer where Mr. Smith lived on Mr. Thomas' property. He described Mr. Smith as respectful towards him at every encounter.

### B. The Nature and Circumstances of the Offense

Mr. Smith has been convicted of conspiring to distribute methamphetamine, using two of his residences for purposes related to drug trafficking, possession with intent to distribute methamphetamine, using a handgun in connection with his possession of methamphetamine, and possession of an unregistered machine gun and unregistered silencers. There can be no argument that the offenses of conviction are not serious crimes. But the applicable statutory mandatory penalties, requiring a 15-year sentence in this case, sufficiently account for the seriousness of the crimes.

### C. Deterrence and the Need to Avoid Unwarranted Disparity

Mr. Smith understands that one of the statutory sentencing factors which this Court must consider in fashioning his sentence is the need for the sentence to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(C). In this regard, an important consideration for the Court is that Mr. Smith, at age 40, has never been convicted of any crime. The Probation Officer correctly attributes him with 0 points, placing him in a criminal history category I. The United States Sentencing Commission released its report on *The Effects of Aging on Recidivism Among Federal Offenders* ("the Report") in December 2017. The full report and key findings are available online at: https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders. One of the key findings of this eight-year study was that "age and criminal history exerted a strong influence on recidivism," with offenders in the lowest criminal history category being least likely to reoffend. *Id.* Executive Summary at 3. The study also demonstrated that older age at release substantially reduced the likelihood of reoffending. *Id.* In

other words, age at release rather than length of sentence is more likely to protect the public from future crimes. Mr. Smith has been in custody for this offense since November 2020 and the Court must impose at least a 15-year sentence. If the Court imposes no more than the statutory minimum sentence, at the time of release Mr. Smith would be approximately 53 years of age, placing him in one of the lowest categories for risk of recidivism.

Pursuant to Section 3553(a)(6) the Court should attempt to avoid unwarranted sentencing disparity between defendants with similar criminal history that are found guilty of similar conduct. While the PSR does not list *United States v. Kevin Criswell*, Case No. 4:21cr37 as a related case, the two cases are most definitely related. The statement of facts in support of Mr. Criswell's plea and the cross-examination at trial certainly demonstrates that Mr. Criswell was engaged with multiple conspiracies involving substantially larger quantities of methamphetamine and had a serious criminal history. Yet Mr. Criswell was offered an opportunity to plead guilty to a single 5-year mandatory minimum offense and was sentenced on December 6, 2021, to only 60 months. See, Case No. 4:21cr37, ECFs 17 and 28. Conversely, Mr. Smith, who has no criminal history, will be required to serve at least 15 years.

### D. Needed Educational and Medical Treatment

In June 2018, Mr. Smith suffered injuries in a car accident which resulted in a titanium plate being surgically placed in his right foot. As a result, he requires prescription orthopedic inserts. (PSR ¶ 72). Mr. Smith also requires medical treatment for high blood pressure, acute kidney disease as well as the problems with his right foot. (PSR ¶ 71). It should be noted that Mr. Smith is Jewish and will be requesting a kosher diet.

Mr. Smith began using marijuana at the age of 11 and first consumed alcohol at age 15. (PSR ¶ 75). Mr. Smith would like an opportunity and would benefit from drug abuse education

and treatment. While he has no history of past mental health counseling or treatment since his incarceration Mr. Smith has requested a mental health evaluation which he has not received. Mr. Smith respectfully requests that the Court recommend to the Bureau of Prisons that during his term of confinement Mr. Smith receive a mental health evaluation with treatment as appropriate.

As mentioned earlier, Mr. Smith is not lacking in intelligence. He would benefit from educational and vocational training. While Mr. Smith earned his GED at age 16 and attended one semester of community college in Arizona, he would benefit from college-level educational classes. Mr. Smith has strong vocational skills in construction and carpentry but would benefit from further vocational training. It is respectfully requested that the Court include recommendations for educational and vocational training in the Judgment which is entered in this case.

**IV.    Motion for Downward Variance from the Advisory Guidelines.**

Despite a chaotic childhood characterized by abuse and neglect, Mr. Smith is 40 years of age and has never been convicted of any crime prior to this case. This lack of criminal history can only be described as remarkable given the extent of childhood trauma to which Mr. Smith was exposed. Although he never completed middle school, at age 16 Mr. Smith obtained his GED. Despite his unstable and chaotic family life, as a young adult Mr. Smith did not engage in criminal activity but rather learned construction and carpentry skills through on-the-job training.

Nine years ago, Mr. Smith moved from Virginia to reside in Arizona. During his time in Arizona, Mr. Smith maintained stable employment and was not arrested for or charged with any crime at all. Ms. Mackillop has been close personal friends with Mr. Smith for the past nine years and has never known him to be involved in criminal activity or to display violent tendencies.

Rather, she knows Eric Smith to be a respectful and caring person that has tried to better the lives of the people around him. See, Exhibit 1.

This is Mr. Smith's first felony conviction. As a result of his conviction in this case Mr. Smith, who grew up hunting, will suffer substantial collateral consequences, including forfeiting his right to vote and his right to ever possess a firearm. Following his lengthy imprisonment, Mr. Smith will also serve at least a five-year period of supervised release. During this term of supervised release, he will be under the close supervision of a United States probation officer who will ensure that he does not reoffend.

Defendant Smith moves for a downward variance from the advisory sentencing guidelines range and respectfully requests that the Court impose of an overall sentence of 180-months. Imprisonment for 15 years would place Mr. Smith at 53 years of age at release, among one of the lowest groups for rate of recidivism; and yet young enough for Mr. Smith to resume working and lead a productive life.

**Conclusion**

Accordingly, Defendant Eric Lee Smith respectfully requests that the Court sentence him to a term of imprisonment of 120 months on Counts One through Four, and Counts Seven and Eight all to run concurrently. Mr. Smith acknowledges, based on the jury's verdict, that the Court must impose a sentence of 60 months consecutive on Count Five. He understands that the mandatory term of supervised release of five years will follow. Mr. Smith contends that an overall sentence of 15 years, to be followed by 5 years of supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Mr. Smith further asks the Court to make the following recommendations to the Bureau of Prisons to assist him in rehabilitation while incarcerated:

1. That the defendant shall receive vocational and educational training, including college-level classes;

2. That the defendant shall receive a mental health evaluation and mental health treatment, including substance abuse treatment and counseling;

3. That the defendant shall receive a medical evaluation and treatment as appropriate, for medical conditions; including hypertension, acute kidney problems and injury to his right foot; and

4. That the defendant shall be incarcerated as close to Phoenix, Arizona as possible, where he plans to reside when he is released.

Respectfully submitted,

ERIC LEE SMITH

By: _____/s/_____
Laura P. Tayman
Virginia State Bar No. 39268
Attorney for Defendant Smith
Laura P. Tayman, PLLC
11815 Fountain Way, Suite 300
Newport News, VA 23606
Telephone Number: 757-926-5277
Email Address: laura@taymanlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2022, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send an electronic notification (NEF) of such filing to the following and all counsel of record:

>Lisa McKeel
>Devon E. Alston Heath
>Assistant United States Attorneys
>United States Attorney's Office
>721 Lakefront Commons, Suite 300
>Newport News, VA 23606
>Tel. (757) 591-4000
>Email: Lisa_McKeel@usdoj.gov
>Email: Devon.Heath@usdog.gov

I further certify that a copy of the foregoing Position with Respect to Sentencing Factors will be sent via email to the following:

>Shannon E. Gerard
>United States Probation Officer
>United States District Courthouse
>600 Granby Street, Suite 200
>Norfolk, Virginia 23510
>Email: shannon_gerard@vaep.uscourts.gov

By:    /s/
Laura P. Tayman
Virginia State Bar No. 39268
Attorney for Defendant Smith
Laura P. Tayman, PLLC
11815 Fountain Way, Suite 300
Newport News, VA  23606
Telephone No. 757-926-5277
Laura@TaymanLaw.net